108 N.J. Super. 99 (1969)
260 A.2d 228
JOHN SOBIN, JR., AND HARRIET SOBIN, HIS WIFE, PLAINTIFFS-APPELLANTS,
v.
M. FRISCH & SONS, DEFENDANT, AND JONES & LAUGHLIN STEEL CORPORATION, DEFENDANT-RESPONDENT, JONES & LAUGHLIN STEEL CORPORATION, THIRD-PARTY PLAINTIFF,
v.
TUBBS GREAT WESTERN CORDAGE CO., A CORP., THIRD-PARTY DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued November 3, 1969.
Decided December 15, 1969.
*100 Before Judges GOLDMANN, LEWIS and MATTHEWS.
Mr. Bertram J. Glassner argued the cause for appellants (Messrs. Mandel, Wysoker, Sherman, Glassner, Weingartner and Feingold, attorneys).
Mr. John I. Lisowski argued the cause for respondent (Messrs. Schneider & Morgan, attorneys; Mr. Elliott Abrutyn on the brief).
The opinion of the court was delivered by MATTHEWS, J.A.D.
Plaintiffs John Sobin, Jr. (John) and Harriet Sobin (Harriet) appeal, pursuant to leave granted under former R.R. 2:2-3(a) (now R. 2:2-4), from an *101 order for summary judgment granted by the trial court in favor of defendant Jones & Laughlin Steel Corporation (Jones & Laughlin). The trial judge found, as a matter of law, that plaintiffs' amended complaint, asserting causes of action against Jones & Laughlin was barred by the statute of limitations. (N.J.S.A. 2A:14-2)
The facts were undisputed at the argument on the motion below, and on this appeal. John, who was a tree trimmer, was rendered unconscious and injured on April 12, 1966, when he fell from a tree in which he was working. He was removed from the scene of the accident to Middlesex General Hospital in a state of unconsciousness. He was admitted to the hospital with a concussion of the brain, an imparted intertrochanteric fracture of the hip and an open fracture of the right upper extremity. He remained in the intensive care unit for approximately two months, during which time he was visited by his attending physician daily. While in intensive care, John remained either totally unconscious or, toward the end of his stay in the unit, in a state of semi-consciousness. On June 16, 1966 he was removed from the intensive care unit, even though his actions were irrational and he had failed to respond verbally to any stimulus. Subsequent attempts were made by his physician to have John respond to verbal stimuli. When non-verbal responses were elicited, they were totally irrational. The attending physician's affidavit, filed with the trial court, stated that during John's entire hospitalization in intensive care and for some period thereafter, he neither was able to comprehend his own situation or condition, nor was he able to respond to any attempt to communicate with him. Portions of the hospital record incorporated in plaintiff's appendix disclose that the condition just described persisted for upwards of 100 days.
John, in an affidavit also filed with the trial court, stated that he had no recollection of events subsequent to his fall until a few days prior to his release from the hospital on July 28, 1966, when he remembers wanting to go home and *102 being very happy about being released. He also stated that he did not recognize his home when he arrived there.
This action originally was instituted on August 17, 1967. M. Frisch & Sons was the only defendant named in the complaint. In the first count, John alleged that defendant was negligent in selling certain rope to him which became brittle and dry and thereafter broke, causing him to fall and suffer injuries. In the third count, John claimed a breach of warranty of merchantability, alleging that defendant sold the aforementioned rope to him knowing the use for which it was required and representing at the time of the sale that the rope was fit for the purpose for which it was to be used. In the second and fourth counts, Harriet sued per quod.
We are advised by counsel for plaintiffs that the action was not instituted against Jones & Laughlin for at least two reasons. First, that it was unknown, at the time, who manufactured the rope and distributed it to defendant M. Frisch & Sons. Second, because the distributor was regarded as a mere conduit, it was decided that it would not be liable in breach of warranty action. Early in April 1968, plaintiffs' counsel discovered that the rope purchased by John, after expert examination, was "sisal" rather than "manila" as represented, and that Jones & Laughlin was the distributor which represented the rope to have been "manila", and sold it as such to defendant M. Frisch & Sons. Plaintiffs then moved for, and were granted, leave to file an amended complaint to include Jones & Laughlin as a defendant. The order permitting the filing of the amended complaint was entered May 1, 1968. The amended complaint was filed May 16, and served May 17, 1968, the latter date being two years and 35 days after the date of the fall complained of.
The trial judge held that the provisions of N.J.S.A. 2A:14-21, pertaining to disabilities, were not meant to cover the type of situation present here, and concluded that the statute of limitations will not be tolled because of unconsciousness, particularly where it lasted for only about 35 *103 days. We note that in this latter observation, the trial judge was in error since the record undisputedly discloses that John was unconscious for upwards of 100 days.
N.J.S.A. 2A:14-2 requires that every action at law for an injury to the person be commenced within two years after such cause of action shall have accrued. Clearly, it would cover the claims asserted in both the original and amended complaints filed by plaintiffs. Burns v. Bethlehem Steel Co., 20 N.J. 37, 42 (1955). The general question presented here, however, is whether the time for the commencement of the action against defendant Jones & Laughlin Steel Corporation was extended under the provisions of N.J.S.A. 2A:14-21. That statute, in pertinent part, reads as follows:
If any person entitled to any of the actions or proceedings specified in sections 2A:14-1 to 2A:14-8 * * * of this title * * * is or shall be, at the time of any such cause of action * * * accruing, under the age of 21 years, or insane, such person may commence such action * * * within such time as limited by said sections, after his coming to or being of full age or of sane mind.
Specifically, we are asked to decide whether John's extended period of unconsciousness and semi-consciousness is encompassed by the word "insane" as used in N.J.S.A. 2A:14-21. Further, if this question is answered in the affirmative, whether John's insanity existed at the time that his cause of action against defendants accrued.
In Kyle v. Green Acres at Verona, Inc., 44 N.J. 100, 113 (1965), the court defined the word "insane" as used in N.J.S.A. 2A:14-21 to mean:
* * * such a condition of mental derangement as actually prevents the sufferer from understanding his legal rights or instituting legal action.
Kyle involved a plaintiff who developed insanity subsequent to the date of an alleged wrongful act of defendant and within *104 the period of limitation, the insanity having allegedly resulted from defendant's act. The court reversed the dismissal of the action, granted as being beyond the period of limitation, and remanded for determinations by the trial court whether the subsequent insanity of plaintiff was caused by defendant's wrongful act, and whether the same was responsible for plaintiff's failure or inability to institute her action prior to the running of the statute. In remanding, the court observed that it should not permit a defendant whose negligent act brings about plaintiff's insanity to cloak itself in the protective garb of the statute of limitations. (44 N.J., at 111.) The trial court was also directed to determine whether plaintiff's suit was commenced within a reasonable time after restoration of sanity.
Defendant asks us to read the word "insane" in N.J.S.A. 2A:14-21 to require something more serious or permanent than the mental trauma and disability suffered by plaintiff. We are referred to the use of the word "insane" in N.J.S.A. 30:4-1 et seq. a statute relating to the involuntary and voluntary commitment of persons to mental institutions. We find this reference plainly to be inapposite. Those statutes have been enacted for the purpose of dealing with persons so seriously deranged as to constitute an actual threat to society, thus requiring their incarceration. Manifestly, the aim of N.J.S.A. 2A:14-21 is to relieve from the strict time restrictions any person who actually lacks the ability and capacity, due to mental affliction, to pursue his lawful rights.
We hold that John's unconsciousness rendered him "insane" as that word is used in N.J.S.A. 2A:14-21, and has been defined in Kyle v. Green Acres at Verona, Inc., above. The record discloses that John clearly was in a mental condition which prevented him from knowing, and, a fortiori, understanding his legal rights for the three and one-half month period immediately following his fall. It is only in our reference to the definition of the word "insane", however, that we find Kyle to be apposite to this appeal.
*105 The facts before us establish conclusively that John's unconsciousness (insanity) occurred simultaneously with the injuries he suffered and, therefore, simultaneously with the accrual of his cause of action against both defendants. Under these circumstances, he must be regarded as having been "insane" at the time that such cause of action accrued. N.J.S.A. 2A:14-21. In our view, to read the words "* * * is or shall be, at the time of any such cause of action * * * accruing * * * insane", to be applicable only if John could be found to have been insane a split-second before he hit the ground would amount to nothing more than casuistry. Cf. Nebola v. Minnesota Iron Co., 102 Minn. 89, 112 N.W. 880 (1907); City of Miami Beach v. Alexander, 61 S.O.2d 917 (Fla. Sup. Ct. 1952); compare Roelefsen v. Pella, 121 Iowa 153, 96 N.W. 738 (Sup. Ct. 1903); Taylor v. Houston, 93 U.S. App. D.C. 391, 211 F.2d 427, 41 A.L.R.2d 724 (1954).
In the alternative, defendant argues that if we apply the provisions of N.J.S.A. 2A:14-21 to the facts existing here, as we do, plaintiffs were only entitled to a "reasonable period" after John's recovery in which to institute their action, and not the full statutory period of two years set forth in N.J.S.A. 2A:14-2. Kyle v. Green Acres at Verona, Inc., above, is cited as authority for this argument. Kyle involved insanity which arose after the cause of action accrued, and, accordingly, is not controlling here. The most direct answer to defendants' argument is the language of N.J.S.A. 2A:14-21, providing that "* * * such person may commence such action * * * within such time as limited by said sections, after his coming to or being of full age or of sane mind." (Emphasis added) Since John was insane at the time his cause of actions accrued, the period of limitation provided for in N.J.S.A. 2A:14-2 did not commence to run until his "being of sane mind" (N.J.S.A. 2A:14-21), more than 100 days after his fall.
The substantive questions of negligence, breach of warranty and proximate causation of plaintiffs' damages are, *106 of course, for a jury. We find that plaintiffs have adequately established, for the purpose of invoking N.J.S.A. 2A:14-21, the causal connection between defendants' alleged wrongful acts and John's insane condition. Cf. Kyle v. Green Acres at Verona, Inc., above.
Reversed.