722 A.2d 558 (1999)
317 N.J. Super. 418
J.L. and B.Z., Plaintiffs-Appellants,
v.
J.F., Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued November 18, 1998.
Decided January 21, 1999.
*560 Morrill J. Cole, Hackensack, for plaintiffs-appellants (Cole, Schotz, Meisel, Forman & Leonard, attorneys; Mr. Cole, of counsel and on the brief).
Jonathan L. Goldstein, Newark, for defendant-respondent (Hellring Lindeman Goldstein & Siegal, attorneys; Mr. Goldstein and Rachel N. Davidson, on the brief).
Before Judges KING, NEWMAN and FALL.
*559 The opinion of the court was delivered by FALL, J.S.C. (temporarily assigned).
In this civil action seeking compensatory and punitive damages for sexual molestation allegedly occurring over thirty years ago during plaintiffs' minority, we examine the applicability and interrelationship of the statute of limitation tolling provision contained in N.J.S.A. 2A:61B-1(c) and the "reasonable discovery" accrual standard in N.J.S.A. 2A:61B-1(b). Plaintiffs appeal from an order dismissing their complaint with prejudice, based on failure to institute suit within the two-year statute-of-limitation period. We reverse and remand for further proceedings consistent with this opinion.

I.
Plaintiffs, C.C., J.L., and B.Z. are sisters. C.C. does not participate in this appeal. In July 1997 when the complaint in this matter was filed B.Z. was age 55, J.L. was age 52, and C.C. was age 44. Defendant is plaintiffs' uncle. He is married to M.F., sister of plaintiffs' deceased mother.
B.Z. is the oldest sister. According to her certification, she was repeatedly sexually abused by defendant throughout her childhood and teenage years. The abuse occurred while B.Z. was alone with defendant, during family visits to his house. B.Z. said she "felt too ashamed and guilty to come forward and tell anyone of the abuse in order to seek redress. [She] believed [she] had no choice but to suppress [her] pain." B.Z. feared going public about the abuse would "subject [her] to personal vilification and also might mean sacrificing [her] cherished relationship with M.F.," her aunt and wife of defendant.
B.Z. certified she did not know that her sister, J.L., had also been abused by defendant until the sister-plaintiffs had a conversation at a family gathering in November 1995. B.Z. knew defendant had sexually abused the youngest sister, C.C., on one occasion. Sometime after B.Z. was married to her first husband, C.C. told B.Z. that defendant had abused her. B.Z. then informed her parents of the abuse suffered by C.C. In response, her "parents decided that the wisest way to deal with the situation was to avoid family grief and ignore the situation." B.Z. did not tell her parents or C.C. that defendant had previously abused her. B.Z. then told C.C. to avoid defendant.
B.Z. contends that until the conversation among the sister-plaintiffs in the fall of 1995, she "never understood that the psychological trauma [she had] suffered during [her] life was caused by [J.F.'s] abuse" and that "[i]t is only this recent learning that J.F. did not limit his abuse to [her]" that gave her the ability to "articulate and understand for the first time that the damage [she has] suffered was the result of J.F.'s sexual abuse."
Plaintiff J.L. also submitted a certification in opposition to defendant's motion to dismiss the complaint. She alleges defendant sexually abused her during her childhood and teenage years. She "tolerated and suppressed [her] uncle's abuse because of [her] need to be part of J.F.'s family and to experience what [she] believed to be [her aunt's] love." J.L. never told anyone about defendant's abuse prior to November 1995. She "lived in isolation with [her] pain, believing [she] was the only one to have suffered from J.F.'s sexual abuse." After the conversation with her sisters in November 1995, J.L. was "now able, for the first time, to articulate and understand the relationship between J.F.'s conduct and the psychological and emotional harm [she has] experienced during [her] life."
*561 C.C.'s certification reveals she was subjected to one incident of sexual abuse by defendant. Throughout her life, C.C. has "felt great shame and embarrassment when thinking of this incident." She told B.Z. what defendant did to her and B.Z. advised her to avoid him. B.Z. did not reveal to C.C. she had also been sexually abused by defendant until the sisters had their November 1995 conversation. Further, C.C. did not discover defendant had abused J.L. until the November 1995 conversation.
The certification of Dr. Harvey M. Hammer, a psychiatrist with significant experience in treating victims of sexual abuse, was submitted in opposition to defendant's motion to dismiss the complaint. Dr. Hammer met with each of the sisters before writing his certification. B.Z. informed Dr. Hammer she was sexually abused by defendant from age ten until her mid-teens; that she was unable to stop the abuse because her uncle "simply had too much power for her to resist what he was trying to do"; that her uncle had repeatedly groped and fondled her breasts and genitals, and often stripped and masturbated in front of her, ejaculating on her leg; and that defendant demanded she perform oral sex on him when she was approximately eleven years old.
Regarding the abuse suffered by C.C., Dr. Hammer said, "B.Z. learned [after B.Z. was married] that J.F. kissed C.C.'s genital area and touched her breasts." However, "B.Z. and C.C. did not engage in any extensive conversation with respect to J.F.'s abuse of C.C. ...." When B.Z. learned of C.C.'s abuse she advised C.C. to stay away from their uncle. B.Z. and C.C. informed Dr. Hammer that thereafter C.C. only had minimal contact with defendant.
J.L. advised Dr. Hammer that defendant began abusing her when she was approximately age ten or eleven; he fondled and kissed her breasts and genitals; performed oral sex on her before masturbating; and demanded she "manipulate his penis while talking `dirty.'"
Dr. Hammer certified the abuse by defendant grossly and adversely affected and damaged the sisters' "personalities, their character, and their general psychological well-being." He stated "their overwhelming sense of shame became an integral part of their character, leading to each of the sisters' feelings of emotional isolation and subsequent emotional damages." He said the sisters did not repress or forget the events but they "were simply incapable of confronting the abuse." Dr. Hammer stated, "[t]he overwhelming shame and guilt suffered by B.Z. and J.L. made it impossible for them to deal with the abuse through any mechanism other than denial."
Dr. Hammer noted the sisters did not "have a real understanding of the extent of the deprivations and damage done by the Uncle to all of them" until they learned in the fall of 1995 that each of them had been subjected to similar sexual abuse by defendant. Dr. Hammer said the sisters' "need for silence" turned into "an understandable rage when each of them understood, for the first time, that the damage suffered by each of them during their lifetimes had been caused to a very great extent by the depraved and sadistic acts committed against them by their own uncle." Dr. Hammer stated each of the sisters "has suffered serious damage, psychologically and spiritually, as a result of the sexual abuse committed on them by their Uncle." B.Z., the sister who was abused for the longest period of time, "shows significantly more damaging symptoms and trouble...." Dr. Hammer explained,
It is also clear to me that there is justifiable reason underlying [the sisters'] inability to come forward and seek redress against the Uncle at any time prior to their learning that each of the three had been subjected to his abuse. The ability to talk among themselves, to compare incidents and to compare the psychological damages and injuries suffered by each of them, led them to an understanding that each of them was not singled out, that neither of them had been guilty of misconduct and as a group of three they were able to overcome their shame and verbalize their pain and rage.
It is not unusual for one who thinks he or she is singled out by a predator such as J.F., to be incapable of doing anything *562 about the abuse. This is so even if the memory of the events is not "repressed" as it was not in the case of these three individuals. What happens is that the overwhelming nature of guilt and shame and the lack of understanding of the psychological impact of damage done makes it impossible for the individual to cope with the abuse. It is not unusual in cases of this kind for the individual to begin to understand the extent to which the damage has caused the violations of the victim's body and spirit when the victim learns that he or she is not the only victim and when the victim is able, through an understanding of what has happened, to relate, for the first time, that which happened to the psychological and spiritual damage suffered later in life.
It is clear to me that the symptoms displayed by all three of these individuals clearly relate to the kind of offense committed against them by J.F. It is my opinion that each of them was incapable of relating those events of her early years to the damage suffered and experienced in the later years. It would be unfair to deprive them of the opportunity to seek redress simply because the Uncle by his grossly inappropriate conduct had rendered them incapable of fending for themselves psychologically and legally. All three individuals suffer from mental disorders as defined by DSM IV Criteria.
Plaintiffs also relied on the certification of Benjamin E. Saunders, Ph.D. in opposition to defendant's motion to dismiss. Dr. Saunders is an Associate Professor in the Department of Psychiatry and Behavioral Science at the Medical University of South Carolina, Director of the Family and Child Program within the National Crime Victims Research and Treatment Center, and a practicing therapist. Dr. Saunders never met or spoke with the plaintiffs. He was involved in the "National Women's Study," a random, nationwide study of United States adult women regarding their sexual assault history. Dr. Saunders provided statistics from the two-year study which was conducted from 1989 to 1991. The average age of women questioned in the study was 41. The 3,220 women who completed the study were questioned "as to whether they had been the victims of childhood sexual assault and if so, when they disclosed the childhood sexual assault to others." In summarizing the results Dr. Saunders said,
Of the approximately 3,220 women who completed the study, 8.9% responded that they had been the victims of sexual assault prior to the age of 18. Through our study, we discovered that 36% of the women who had been the victims of childhood sexual assault had never told anyone of their childhood sexual assault until responding to our interviewer. Of these victims, 19% of the women told immediately (within 24 hours) and 41% reported their assault within one year. Our study also revealed that victims who suffered oral sex were less likely to tell within one month and victims of abuse by extended family members (such as an uncle) were also less likely to tell quickly. The study's data also revealed that victims assaulted at a younger age tended to delay telling more.
The motion judge dismissed plaintiffs' case on statute of limitation grounds, and on the language of N.J.S.A. 2A:61B-1. The judge reasoned that plaintiffs had knowledge of the sexual abuse since it occurred, and made life choices in not doing anything about it in order to protect their family. The judge stated,
[I]t would be highly unusual for a person of average intelligence not to have known that this is a cause of action for the last 20 years. You'd have to be living in a hole in the wall. You'd have to have never watched television, never read a magazine, never read a newspaper to know that the damages, namely the psychological effects, are something that are actionable, if in fact, there is a causal connection.
The judge found "[T]he two-year statute is to prevent fraud, to prevent extortion, to prevent those types of evils and others, not to disrupt and to prevent the disruption of settled lives. These are all settled lives," further stating, "this is not a case of repressed memories." The judge did not find "any valid procedural or substantive reason to allow this claim to go forward," and concluded *563 "their [plaintiffs'] own discovery of what was causing their problems in living does not toll the statute."
In dismissing plaintiffs' claims, the judge construed the "reasonable discovery" provision in N.J.S.A. 2A:61B-1(b) to mean when "it should have been known, reasonably should have been known."
On appeal, plaintiffs present the following arguments for consideration:
POINT I
PLAINTIFFS' INJURED MENTAL STATES, CAUSED BY DEFENDANT'S REPEATED ACTS OF SEXUAL ABUSE, MUST BE TAKEN TO PERMIT PLAINTIFFS TO ASSERT THEIR CLAIMS AT THIS TIME.
A. THE COURT BELOW MISAPPLIED THE RULES THAT GOVERN SUMMARY JUDGMENT MOTIONS.
B. PLAINTIFFS STATE A COGENT AND LAWFUL BASIS FOR TOLLING THE OLD STATUTE OF LIMITATIONS AND INVOKING N.J.S.A. 2A:61B1.
We conclude from our review of the record that the issues of whether plaintiffs reasonably discovered their injuries from the sexual abuse and its causal relationship to the acts of sexual abuse, and whether the statute-of-limitation period should be tolled under the facts presented can only be resolved after a plenary hearing, as contemplated in N.J.S.A. 2A:61B-1(c).

II.
Plaintiffs argue two theories warrant tolling the statute of limitations to permit them to bring their claims. The first theory is that plaintiffs are entitled to a plenary hearing under N.J.S.A. 2A:61B-1(c) because their "mental state" prevented them from pursuing a claim against defendant. The second theory argued is that the statute of limitations should be tolled under N.J.S.A. 2A:61B-1(b) until November 1995 when the sister-plaintiffs connected, for the first time, the "psychological damage they suffered to the acts of sexual abuse...."
In support of their argument plaintiffs cite various scholarly articles recommending victims of child sexual abuse be permitted to file claims after statutes of limitation periods expire. Plaintiffs assert, "[h]aving caused the condition that, at least on this record, made it impossible for his victims to come forward, the defendant should not be entitled to the repose of the statute of limitations."
Defendant argues the two-year statute-of-limitation period should not be tolled. He contends plaintiffs cannot claim "insanity" under Jones v. Jones, 242 N.J.Super. 195, 576 A.2d 316 (App.Div.), certif. denied, 122 N.J. 418, 585 A.2d 412 (1990), and that N.J.S.A. 2A:61B-1 is not applicable to this case.
In Jones v. Jones, 242 N.J.Super. at 205, 576 A.2d 316, we applied the insanity standard of N.J.S.A. 2A:14-21 in determining that "mental trauma resulting from a pattern of incestuous sexual abuse may constitute insanity under N.J.S.A. 2A:14-21, so as to toll the statute of limitations." In Jones, plaintiff was subjected to years of sexual abuse by her father, resulting in the birth of a handicapped child. She alleged she had "repressed all awareness of her incestual relationship with her father," and alleged duress because her father had "repeatedly threatened to kill her if she were to disclose his acts of abuse." Id. at 199, 576 A.2d 316. The plaintiff in Jones filed her complaint nine months after the statute of limitations expired. She alleged her suppressed memories of the abuse did not surface until after she began counseling. Ibid. We were "convinced that plaintiff's submissions in opposition to defendants' motion for summary judgment raised genuine issues of material fact concerning whether she had the ability and capacity, due to mental affliction allegedly caused by defendants' conduct, to assert her lawful rights." Id. at 205, 576 A.2d 316. We also noted many recent studies revealed the "disabling psychological impact of incestuous sexual abuse." Ibid. We concluded a plenary hearing should be held to determine whether the statute-of-limitation period should be tolled because of plaintiff's allegation of mental impairment and duress. Id. at 202, 576 A.2d 316.
*564 Plenary hearings are generally held when determining whether a statute of limitations should be tolled, since credibility is usually at issue. Lopez v. Swyer, 62 N.J. 267, 275, 300 A.2d 563 (1973); T.S.R. v. J.C., 288 N.J.Super. 48, 61, 671 A.2d 1068 (App. Div.1996). New Jersey recognizes the "discovery" rule, which "provides that in an appropriate case a cause of action will be held not to accrue until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim." Lopez, 62 N.J. at 272, 300 A.2d 563. Ordinarily, the determination is after a plenary hearing "since demeanor may be an important factor where credibility is significant." Id. at 275, 300 A.2d 563. The Court recognized that although an injured party may be aware he suffered an injury, "the injured party may not know it is attributable to the fault or neglect of another." Id. at 274, 300 A.2d 563. The Court also directed judges consider the equitable claims of the parties as it may be unjust "to compel a person to defend a law suit long after the alleged injury has occurred, when memories have faded, witnesses have died and evidence has been lost." Ibid.
In 1992 the Legislature established a statutory civil action for sexual abuse in N.J.S.A. 2A:61B-1. The act is prospective and "shall not apply to any action which is commenced before the effective date." Historical and Statutory Note on N.J.S.A. 2A:61B-1 (1992). "A civil action is commenced by filing a complaint with the court." R. 4:2-2. Because the complaint in this matter was filed in 1995, N.J.S.A. 2A:61B-1 applies.
Prior to the enactment of N.J.S.A. 2A:61B-1, claimants could bring sexual abuse actions under theories of "assault, battery, and intentional infliction of emotional distress...." Senate Judiciary Committee Statement on N.J.S.A. 2A:61B-1 (1992). Pursuant to the legislation, "`[s]exual abuse' means an act of sexual contact or sexual penetration between a child under the age of 18 years and an adult...." N.J.S.A. 2A:61B-1. The act states, in relevant part,
b. In any civil action for injury or illness based on sexual abuse, the cause of action shall accrue at the time of reasonable discovery of the injury and its causal relationship to the act of sexual abuse. Any such action shall be brought within two years after reasonable discovery.
c. Nothing in this act is intended to preclude the court from finding that the statute of limitations was tolled in a case because of the plaintiff's mental state, duress by the defendant, or any other equitable grounds. Such a finding shall be made after a plenary hearing, conducted in the presence of the jury. At the plenary hearing the court shall hear all credible evidence.... The court may order an independent psychiatric evaluation of the plaintiff in order to assist in the determination as to whether the statute of limitations was tolled.

[N.J.S.A. 2A:61B-1(b) and (c) ].
N.J.S.A. 2A:14-2 states, "Every action at law for an injury to the person caused by the wrongful act, neglect or default of any person within this state shall be commenced within 2 years next after the cause of any such action shall have accrued." However, "[b]ecause of the unique nature of sexual abuse, which may only be discovered by an adult victim after years of repression, [N.J.S.A. 2A:61B-1] provides that a civil suit for sexual abuse shall accrue at the time of reasonable discovery of the injury and its causal relationship to the act of sexual abuse. Any such action must be brought within two years after reasonable discovery." Senate Judiciary Committee Statement on N.J.S.A. 2A:61B-1 (1992). Once a potential claimant knows she has been injured and that the injury is the fault of another, the statute-of-limitation period begins to run. Gantes v. Kason Corp., 145 N.J. 478, 679 A.2d 106 (1996). The period begins to run when a potential claimant knows or should know the facts underlying his injury and fault, and not necessarily when she learns the legal effect of those facts. Grunwald v. Bronkesh, 131 N.J. 483, 621 A.2d 459 (1993). Ignorance of the existence of a cause of action generally will not toll the statute-of-limitation period *565 unless there was concealment. Reilly v. Brice, 109 N.J. 555, 538 A.2d 362 (1988).
N.J.S.A. 2A:14-21 forecloses tolling the statute-of-limitation period unless plaintiff was insane. Kyle v. Green Acres at Verona, Inc., 44 N.J. 100, 106-07, 207 A.2d 513 (1965). N.J.S.A. 2A:14-21 states, "If any person entitled to any of the actions or proceedings specified in sections 2A:14-1 to 2A:14-8 ... of this title ... is or shall be, at the time of any such cause of action ... under the age of 21 years, or insane, such person may commence such action or make such entry, within such time as limited by said sections, after his coming to or being of full age or of sane mind." In Jones, we determined, "Mental trauma resulting from a pattern of incestuous sexual abuse may constitute insanity under N.J.S.A. 2A:14-21, so as to toll the statute of limitations." Jones, 242 N.J.Super. at 205, 576 A.2d 316.
Here, the statute-of-limitation period cannot be tolled by any claim by plaintiffs of "insanity" under N.J.S.A. 2A:14-21. Unlike the plaintiff in Jones, 242 N.J.Super. at 195, 576 A.2d 316, the plaintiffs in this matter did not suppress the memories of the defendant-uncle's alleged sexual abuse, nor were they under duress by defendant to conceal the alleged abuse. Dr. Hammer concluded the plaintiffs had not suppressed memories of the abuse. He said the sister-plaintiffs dealt with the abuse through "denial." Accordingly, plaintiffs cannot claim "insanity" to toll the statute-of-limitation.
N.J.S.A. 2A:61B-1(b) states a cause of action accrues "[A]t the time of reasonable discovery of the injury and its causal relationship to the act of sexual abuse." In their brief, plaintiffs argue the complaint "alleges, and perhaps not as specifically clearly as could be, but does allege in paragraph 10 that these plaintiffs did not know that the damage caused them was caused by the injury until a meeting in the fall of 1995." Paragraph 10 of the complaint states in pertinent part, "[I]t was only the mutual revelation that occurred in conversations in the fall of 1995 when each plaintiff learned of the acts committed by defendant J.F. against her sisters, that plaintiffs were able, for the first time, to begin to articulate for themselves and to each other, the depths of the damages suffered."
In Dattoli v. Yanelli, 911 F.Supp. 143 (D.N.J.1995), the district court addressed N.J.S.A. 2A:61B-1(b), ruling a plenary hearing is required to determine the applicability of the discovery rule to plaintiff's complaint alleging sexual molestation.[1] District Judge Politan noted "[f]alse accusations of child sexual abuse are just as difficult to refute as claims of sexual abuse are to prove." Id. at 147. The complaint, filed approximately three years after the statute of limitations expired, alleged plaintiff did not discover the causal connection between the abuse and the injury until after plaintiff underwent two years of therapy. Ibid. The plaintiff in Dattoli did not submit an expert's report in support of his assertion that he failed to make the causal connection until two years of therapy. Id. Judge Politan determined equitable considerations entitled plaintiff to a plenary hearing to try to convince the court of his allegations regarding discovery of the causal connection. Id. at 146.
Here, plaintiffs' expert, Dr. Hammer, stated it was not unusual for victims of *566 childhood sexual abuse to "begin to understand the extent to which the damage has caused the violations of the victim's body and spirit when the victim learns that he or she is not the only victim...." The reasons advanced by plaintiffs for waiting so long prior to instituting suit raise questions of material fact on the issue of "reasonable discovery" of their injury from the abuse and its causal relationship to the acts of sexual abuse. N.J.S.A. 2A:61B-1(b). Neither plaintiff told anyone about defendant's abuse of them until the November 1995 conversation between the sisters. They contend that upon those mutual revelations they were, for the first time, able to articulate and understand the relationship between defendant's conduct and the psychological and emotional harm they had experienced during their life. They contend it was only because of recent events that they were now able to understand the damage and harm defendant has caused them. These contentions raise questions of material fact as to whether their cause of action against defendant began to accrue only after their November 1995 mutual revelations, when they allegedly discovered, for the first time, the harm caused by defendant and the "causal relationship to the act of sexual abuse." N.J.S.A. 2A:61B-1(b). Such a determination depends on their state of mind, and their credibility. "[I]ssues hinging upon a party's mental state are not appropriate for resolution by way of summary judgment." Jones, 242 N.J.Super. at 206, 576 A.2d 316.
Accordingly, a plenary hearing should be held to determine plaintiffs' state of mind regarding the date they reasonably discovered the injury and the causal connection between the alleged abuse and their injuries. Those findings will then allow the court to decide whether plaintiffs' action was commenced "within two years after reasonable discovery" of the injuries and the causal relationship of those injuries to the acts of sexual abuse. See N.J.S.A. 2A:61B-1(b). We stress that the language of this statutory provision is clear that the focus is on the "reasonable discovery" of the "injury and its causal relationship to the act of sexual abuse," and not simply the reasonable discovery of the acts of sexual abuse. This is different from the "repressed memory" situation, where the victim suppresses memory of the actual sexual abuse event, and is not consciously aware of the sexual abuse. Under the "reasonable discovery" accrual standard contained in N.J.S.A. 2A:61B-1(b), plaintiffs may have a conscious memory of the sexual abuse, but may not have reasonably discovered that the serious psychological and mental illness injury they suffer from was caused by that sexual abuse.
The interrelated issue presented is whether the statute-of-limitation period should be tolled because of plaintiffs' "mental state," or "on any other equitable grounds." See N.J.S.A. 2A:61B-1(c). When presented with allegations such as contained in the certifications of plaintiffs, the issue is whether the mental state of plaintiffs, as diagnosed and detailed by Dr. Hammer, considering the extent of the sexual abuse suffered and the surrounding unique circumstances of the case, provide a sufficient basis under this provision for tolling of the statute-of-limitation period.
The language in N.J.S.A. 2A:61B-1(c) provides little guidance concerning the precise meaning of "mental state" or the catch-all phrase "any other equitable grounds." In adopting this provision, the Legislature had the opportunity to utilize the "insanity" criteria suggested in Jones and contained in N.J.S.A. 2A:14-21. Instead, it utilized the broader category of "mental state," perhaps giving recognition to the uniqueness of the facts of each case. The psychological dynamics and circumstances will differ from case to case. It is well recognized that the resulting injury from sexual abuse can manifest itself in a wide range of behavioral, emotional and psychological symptoms or illnesses. Gallagher, "Damages, Duress, and the Discovery Rule: The Statutory Right of Recovery for Victims of Childhood Sexual Abuse," 17 Seton Hall Legislative Journal 505, 511-12 (1993).
Logically, therefore, the statute declares that a finding of tolling shall be made after a plenary hearing, where the court "shall hear all credible evidence ..." and the court "may order an independent psychiatric evaluation of the plaintiff in order to *567 assist in the determination as to whether the statute of limitations was tolled." N.J.S.A. 2A:61B-1(c). A full examination of the "mental state" of each plaintiff is required, as is a review of all the peculiar circumstances of the case to determine the existence of "any other equitable grounds" before a determination is made whether the applicable statute-of-limitation period is tolled. A plenary hearing is necessary to fully evaluate the applicability of this statutory criteria to plaintiffs. This is true where the credibility of plaintiffs, which involves the viability of their position as expressed through Dr. Hammer, is at issue. The motion judge here essentially concluded plaintiffs' position was not credible. That conclusion may be correct. However, plaintiffs are entitled to have their credibility tested and determined at a plenary hearing. We do not rule or suggest that every case involving an evaluation of a tolling claim under N.J.S.A. 2A:61B-1(c) mandates a plenary hearing. There must be some fact in dispute material to a resolution of the tolling issue before a plenary hearing is required. Here, the prima facie showing by plaintiffs of their "mental state" and the existence of "equitable grounds," possibly justifying tolling of the statute-of-limitation period, raised factual disputes necessitating a plenary hearing.
We note the statutory language suggesting the plenary hearing should occur "in the presence of the jury" does not mean the tolling issue is submitted to the jury. The decision-making function on the tolling issue is determined by the judge. Lopez, 62 N.J. at 274-76, 300 A.2d 563; T.S.R. v. J.C., 288 N.J.Super. 48, 61-62, 671 A.2d 1068 (App. Div.1996); Dattoli, 911 F.Supp. at 146. We construe the application of the statute to the factual allegations of this case as requiring the trial court conduct a plenary hearing, where all credible evidence is presented for consideration. Plaintiffs are equitably entitled to their opportunity to convince the court that the unique circumstances of their case justifies tolling of the running of the statute-of-limitation period.
We are aware there are other equitable considerations the trial court must consider. In Jones, 242 N.J.Super. at 195, 576 A.2d 316, the plaintiff's complaint was filed only nine months after the applicable two-year statute-of-limitation period expired. In Dattoli, 911 F.Supp. at 143, the plaintiff's complaint was filed approximately three years after the statute-of-limitation period expired. Here, plaintiffs' complaint was filed approximately thirty years after the applicable two-year statute-of-limitation period expired. Allowing such a claim to be brought so much later may very well prejudice defendant's ability to prepare and defend the claim because of loss of evidence, dead witnesses and faded memories. Lopez, 62 N.J. at 274, 300 A.2d 563. "By penalizing unreasonable delay, `[statutes of limitations] induce litigants to pursue their claims diligently so that answering parties will have a fair opportunity to defend.'" Jones, 242 N.J.Super. at 203, 576 A.2d 316 (quoting Galligan v. Westfield Centre Service, Inc., 82 N.J. 188, 192, 412 A.2d 122 (1980).) A statute of limitation provides a defendant a fair opportunity to defend claims asserted against him. Galligan, 82 N.J. at 192, 412 A.2d 122. "Once memories fade, witnesses become unavailable, and evidence is lost, courts no longer possess the capacity to distinguish valid claims from those which are frivolous or vexatious." Ibid.
On the other hand, should these horrific allegations be true, it might not be equitable to permit defendant to benefit from a strict adherence to the statute of limitations in the event the aftermath of his acts did in fact cause plaintiffs' delay in bringing their action. While the delay may disadvantage defendant, that possibility must be weighed against the disadvantage suffered by plaintiffs as children against a more powerful and adept adult.

III.
Plaintiffs also argue the motion judge misapplied the rules governing summary judgment motions. Plaintiffs allege the motion judge should have applied the rules governing a motion to dismiss under R. 4:6-2(e) and searched the complaint itself for any "obscure statement" that alleges a cause of action. We disagree. Plaintiffs acknowledge their submission of certifications in opposition *568 to the motion to dismiss turned the motion to dismiss the complaint into a motion for summary judgment.
Defendant argues the motion judge properly applied the standards governing motions for summary judgment. Defendant asserts the motion judge considered all the evidence presented by plaintiffs and properly drew inferences in favor of the plaintiffs. Here, defendant filed a motion to dismiss plaintiffs' complaint for failure to state a claim upon which relief can be granted pursuant to R. 4:6-2(e). If, when considering such a motion to dismiss, the court considers matters outside the pleadings, "the motion shall be treated as one for summary judgment and disposed of as provided by R. 4:46, and all parties shall be given reasonable opportunity to present all material pertinent to such a motion." R. 4:6-2. The motion judge considered certifications filed by plaintiffs in opposition to defendant's motion to dismiss. Thus, pursuant to R. 4:6-2, the motion was converted to a summary judgment motion under R. 4:46.
Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to judgment as a matter of law." R. 4:46-2. The motion judge must determine whether "genuine issues of material fact" exist by considering "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995). "The `judge's function is not himself (or herself) to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Id. at 540, 666 A.2d 146 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).
Here, the motion judge did consider the certifications filed by plaintiffs in support of their opposition to defendant's motion to dismiss. Therefore, defendant's motion to dismiss the complaint was properly converted to a summary judgment motion. In addition, the motion judge stated she considered "everything most favorably to the plaintiffs...." Accordingly, the motion judge properly applied the motion for summary judgment rules. However, as noted herein, the motion incorrectly dismissed plaintiffs' complaint without considering the "reasonable discovery" issue in N.J.S.A. 2A:61B-1(b), and the "tolling" issue under N.J.S.A. 2A:61B-1(c).

IV.
R. 1:12-1(d) provides that a judge shall not sit in any matter where the judge has given an opinion upon a matter in question in the action. Here, the motion judge determined plaintiffs' position was not credible. Accordingly, on remand the plenary hearing must be conducted by a different judge. See N.J. Div. of Youth & Family Services v. A.W., 103 N.J. 591, 617-18, 512 A.2d 438 (1986). This reflects a policy of the courts, and not on the professional manner in which this matter was handled by the motion judge.
Reversed and remanded for further proceedings consistent with this opinion.
NOTES
[1] Other jurisdictions have addressed the issue of whether the statute of limitations should be tolled until a plaintiff makes the causal connection between the injury and the act of sexual abuse.

In Cevenini v. Archbishop of Washington, 707 A.2d 768 (D.C.1998), parishioners alleged they were sexually molested by a priest during their teens. Parishioners brought claims more than ten years after they reached age 18. Their claims were barred by a three-year statute of limitations. The court refused to toll the statute of limitations until the parishioners fully appreciated the full impact of the priest's misconduct. The court noted the parishioners had previously begun to remember the sexual abuse.
In Hollmann v. Corcoran, 89 Wash.App. 323, 334, 949 P.2d 386 (1997), the court held, "[t]he statute of limitations is tolled until the victim of childhood sexual abuse in fact discovers the causal connection between defendant's act and the injuries for which the claim is brought."
In Sellery v. Cressey, 48 Cal.App.4th 538, 55 Cal.Rptr.2d 706 (1996), the court held their statute specifically tolled the statute of limitations for victims of child sexual abuse until the injury is discovered.