# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1575-22

K.K.,

    Plaintiff-Respondent,

v.

D.T.M.,

    Defendant-Appellant.

_____

        Submitted December 18, 2023 – Decided February 1, 2024

        Before Judges DeAlmeida and Berdote Byrne.

        On appeal from the Superior Court of New Jersey,
        Chancery Division, Family Part, Camden County,
        Docket No. FV-04-1681-23.

        Rosenberg Perry & Associates, LLC, attorneys for
        appellant (Robert Matthew Perry, on the brief).

        Morgenstern & Rochester, attorneys for respondent
        (Andrew L. Rochester, on the brief).

PER CURIAM

Defendant appeals from the trial court's issuance of a Final Restraining Order (FRO) in plaintiff's favor and contends the trial court erred because it did not make sufficient findings as to whether a predicate act occurred, or whether he posed an immediate danger to plaintiff. We conclude the trial court made insufficient findings of fact and conclusions of law, vacate the FRO, and remand for more detailed factual findings. The Temporary Restraining Order (TRO) is reinstated pending a new FRO hearing before another judge.

## I.

We glean the following facts from the testimony and evidence adduced at trial. Plaintiff and defendant cohabitated from summer 2021 until November 2022, and share a daughter, "Alexa."[1] On the night of November 10, 2022, plaintiff informed defendant she intended to move out of their shared residence. The next day, plaintiff moved out of defendant's home and took Alexa with her. Plaintiff's father and a friend, R.E., helped plaintiff pack her belongings.

Defendant came home from work while plaintiff was packing. By that time, plaintiff's father had left with a load of plaintiff's belongings, leaving plaintiff, defendant, and R.E. at the property. The parties arranged for defendant

---

[1] We use pseudonyms to protect the confidentiality of the victim, as well as the child due to a related and ongoing custody dispute. R. 1:38-3(d)(10), (13).

A-1575-22

to see Alexa later that evening. Plaintiff returned to defendant's home with R.E. and Alexa. While defendant sat in the dining room with Alexa, plaintiff and R.E. finished packing the car. Plaintiff testified R.E. took the dog crate and went to place it in plaintiff's car. Plaintiff alleged defendant placed his hands around plaintiff's throat, shook her, and told her to "knock it off and quit." Defendant let go of plaintiff's throat when he heard R.E. come back inside.

Plaintiff then checked the house to make sure she had all her belongings and went out to her car with defendant, Alexa, and R.E. Video footage shows defendant and R.E. exchanging a "high-five" when they all exited the home. The video surveillance did not show plaintiff in any distress. At her parents' residence, and only after plaintiff had bathed, fed, and placed Alexa to bed, did she tell R.E. defendant choked her in the dining room. The next day, plaintiff and R.E. returned to defendant's house to collect some remaining furniture. Video footage showed plaintiff and R.E. laughing and playfully kicking one another as they entered defendant's home.

Over the next two weeks, plaintiff agreed to meet defendant only in public places to visit with Alexa. She told defendant she felt uncomfortable meeting him and asked to convene at the local police station, and later at a local mall. Defendant told plaintiff he was unhappy with her unilateral decision-making

A-1575-22

regarding visitation with their daughter. On November 28, 2022, plaintiff filed for a TRO against defendant.

Plaintiff's initial application alleged defendant came home from work and choked her in the dining room on November 11. Plaintiff amended her TRO complaint two days later to allege defendant beat, choked, and verbally abused her on several prior occasions, beat their dog, shook Alexa, and stuck his fingers down Alexa's throat to stop her from crying, and forced plaintiff to engage in unwanted sexual activity while pregnant. Plaintiff stated she was frightened for her and Alexa's safety because of these actions. The amended complaint also stated the trial court orally gave plaintiff sole custody of Alexa at the initial trial court hearing, but the TRO was silent on that matter. Plaintiff wanted the TRO "amended to fix that in writing on the Order."

On December 19, 2022, the case proceeded to a hearing on plaintiff's FRO application; plaintiff, defendant, and defendant's mother testified.

Plaintiff again amended her complaint to include allegations of domestic violence—this time alleged against her family. She stated she "felt as though [she] didn't have a choice" to engage in sexual activity while pregnant and "felt a lot of fear around him." Plaintiff believed if she did not do what defendant wanted, it would "end badly" for her; she stated she was in fear for her life then

and at the time of the hearing. Plaintiff asserted her fear was grounded in her past experiences with defendant: if she attempted to express to defendant how she felt, he would grab her by the throat, shake her, and "tell[] [her] to quit or calm . . . the F down." According to plaintiff, this happened on multiple occasions. Plaintiff also testified these incidences were not a form of consensual sexual behavior.

With respect to November 11, plaintiff testified defendant came home from work angry and wanted her to leave. Plaintiff testified when she first brought Alexa back from her parents' home to visit with defendant, he

> sat in the dining room area with [Alexa] while [plaintiff] and [R.E.] finished packing up the car. At this point, [R.E.] was taking the dog crate into [plaintiff's] car, and [plaintiff] was getting ready to put [Alexa] back in her car seat. . . . [T]his was when [defendant] again put his hand around [plaintiff's] throat, and . . . viciously shook [her] and told [her] to knock it off and quit.

Plaintiff stated defendant held her throat for at least a minute.

Plaintiff testified R.E. did not witness the incident. When R.E. returned from the car, defendant released plaintiff's throat and plaintiff calmly left the house. Plaintiff testified she wanted to get out of the situation as calmly and quickly as possible because she felt all three of them were in danger of further acts of domestic violence by defendant.

5

Plaintiff's testimony then focused on defendant's care of their daughter. She stated defendant would stick at least one or two fingers down Alexa's throat to get her to stop crying; he would also slap her on the mouth and slap her harder if she continued to cry. To support her testimony, plaintiff produced two videos[2] which captured defendant's actions. Plaintiff testified defendant would leave his firearms out on the table in Alexa's presence. Plaintiff also testified she feared for the safety of her family based upon threats defendant made to her mother and brother.

On cross-examination, plaintiff confirmed there were cameras on the premises, and there was no footage of defendant assaulting her on November 11 or in the past. Plaintiff testified she never went to the police for any of the prior incidents she described, never received medical treatment, and never took pictures of her prior injuries.

As to the choking, plaintiff confirmed she engaged in sexual activity with defendant and other women that involved choking, but asserted it was at defendant's insistence. She confirmed she was active on dating websites during her relationship with defendant but stated that was also at defendant's request.

---

[2] Neither party provided the videos as part of the record on appeal.

A-1575-22

Plaintiff admitted to sending defendant sexual text messages in which she consented to defendant choking her as a form of sexual play.

After the November 11 incident, plaintiff explained she did not immediately file for a restraining order because she was still afraid of defendant and did not know how he would respond. Plaintiff stated, although she wanted defendant to see Alexa, she did not want Alexa to spend the night with defendant because he did not know how to parent her, and she was only comfortable meeting defendant in public spaces.

Defendant testified he did not choke plaintiff on November 11, 2022, and that they "had a pretty loving, caring relationship." He claimed plaintiff asked defendant to choke her as part of their consensual sexual play, although he never felt comfortable doing so. Defendant also testified he never choked, assaulted, or abused plaintiff during an argument or dispute. He stated plaintiff wanted to explore her sexuality with other women; at no point did he force plaintiff to engage in any sexual activity.

Defendant testified the parties did not argue when plaintiff informed him she was moving out the next day. When he came back from work on November 11, he went into the house and worked on repairing a humidifier while plaintiff packed. Defendant stated plaintiff was free to go if she chose and he did not try

7

to stop her.  According to him, he only asked her to work on arrangements with respect to co-parenting Alexa.

Defendant then played a series of videos from his own security cameras located on the property.  The first showed him carrying Alexa, followed by plaintiff and R.E., out to plaintiff's car on November 11.  In the second video, plaintiff and her friend were laughing as they left the house.  The third showed R.E. "high-fiving" defendant as she and plaintiff left the house.  The last showed plaintiff and R.E. laughing and kicking each other in front of the house the following day on November 12.  Defendant testified he retained an attorney on November 15 because of his inability to see his daughter on terms other than those dictated by plaintiff.  The record is unclear whether defendant filed or attempted to file a complaint prior to the domestic violence proceedings.

The trial court orally rendered its decision, noting this was a difficult case "because the real evidence here is just contained within the two parties that have provided the testimony."  It found the videos submitted by each party unhelpful.  Without elaboration, the court deemed plaintiff "uniquely credible."  The court held plaintiff needed the protection of a FRO.  The court made no factual findings with respect to the predicate act or the history of prior abuse, made no credibility determinations regarding defendant, and did not comment on the

A-1575-22

timing of the TRO application in the context of defendant's request for custody. Instead, it turned immediately to custody and parenting issues. This appeal followed.

## II.

Our review of a FRO is generally limited. C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020). In matters involving domestic violence, the Supreme Court has held the findings of a trial court "are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998) (citing Rova Farms Resort, Inc., v. Invs. Ins. Co., 65 N.J. 474, 484 (1974)). Questions of law "are not entitled to that same degree of deference if they are based upon a misunderstanding of the applicable legal principles." R.G. v. R.G., 449 N.J. Super. 208, 218 (App. Div. 2017) (quoting N.J. Div. of Youth & Fam. Servs. v. Z.P.R., 351 N.J. Super. 427, 434 (App. Div. 2002)); see also H.E.S. v. J.C.S., 175 N.J. 309, 329-31 (2003) (remanding to the trial court because it failed to "consider the totality of the circumstances surrounding the complaint"); D.M.R. v. M.K.G., 467 N.J. Super. 308, 324-25 (App. Div. 2021) (reversing the trial court's entry of a FRO due to lack of findings, no prior history of domestic abuse existing between the parties, and

9

plaintiff's lack of fear). We review conclusions of law de novo. C.C., 463 N.J. Super. at 428.

When determining whether to issue a FRO pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35, a trial court must make two distinct determinations. Silver v. Silver, 387 N.J. Super. 112, 125-27 (App. Div. 2006). First, the court "must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred." Id. at 125.

If a court finds a predicate act occurred, "the judge must determine whether a restraining order is necessary to protect the plaintiff from future danger or threats of violence." D.M.R., 467 N.J. Super. at 322.

> Although this second determination—whether a domestic violence restraining order should be issued—is most often perfunctory and self-evident, the guiding standard is whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6), to protect the victim from an immediate danger or to prevent further abuse.
>
> [Silver, 387 N.J. Super. at 127.]

N.J.S.A. 2C:25-29(a) provides "[t]he court shall consider but not be limited to" six factors, including the previous history of domestic violence between the parties, N.J.S.A. 2C:25-29(a)(1). "[W]hether the victim fears the defendant" is

10

an additional factor the trial court may consider. <u>G.M. v. C.V.</u>, 453 N.J. Super. 1, 13 (App. Div. 2018) (quoting <u>Carfagno v. Carfagno</u>, 288 N.J. Super. 424, 435 (Ch. Div. 1995)). The court must determine, pursuant to the totality of the circumstances, whether the FRO is necessary "to protect the victim from an immediate danger or to prevent further abuse." <u>Silver</u>, 387 N.J. Super. at 127; <u>C.C.</u>, 463 N.J. Super. at 436; <u>see also</u> N.J.S.A. 2C:25-29(b) ("[T]he court shall grant any relief necessary to prevent further abuse."). The inquiry is necessarily fact specific. <u>Silver</u>, 387 N.J. Super. at 127-28 (remanding for further fact finding).

### III.

On appeal, defendant asserts the trial court failed to conduct any analysis before rendering its decision, failed to make sufficient findings of fact in accordance with <u>Rule</u> 1:7-4(a), and its decision is "wholly and completely unsupported by the evidence." Defendant argues plaintiff's claims "were unsubstantiated, inconsistent, and obviously designed to gain an advantage in a custody matter."

Defendant maintains the court failed to make any factual findings and instead only made a "cursory" finding of credibility as to plaintiff's testimony. According to defendant, this finding was limited to a single sentence, does not

articulate any reason to support its determination, and is woefully insufficient to justify the FRO.

Defendant similarly argues there was no evidence of assault outside of her allegations, which defendant asserts conveniently materialized after the parties' custody dispute over Alexa. He contends plaintiff's claims were proven false based on plaintiff's text messages and what he views as contradictory testimony about the role of choking in their relationship.

Our review establishes that the trial court failed to make adequate factual findings. Rule 1:7-4(a) obligates the trial court to "find the facts and state its conclusions of law thereon in all actions tried without a jury . . . ." Our review is severely inhibited when the trial court fails to elaborate upon the reasons for its opinion. Romero v. Gold Star Distrib., LLC, 468 N.J. Super. 274, 304 (App. Div. 2021) (quoting Giarusso v. Giarusso, 455 N.J. Super. 42, 53 (App. Div. 2018)). Naked conclusions, such as finding a party "uniquely credible," cannot satisfy the requirements of Rule 1:7-4(a). Ibid. (quoting Curtis v. Finneran, 83 N.J. 563, 570 (1980)); see also J.D. v. M.D.F., 207 N.J. 458, 488 (2011). The trial court's failure to articulate sufficient findings of fact and legal conclusions for the entry of a FRO is worthy of remand. J.D., 207 N.J. at 488.

12

Although on matters of credibility, we do not require detailed articulation due to "the intangibles of demeanor, behavior and common experience," it nonetheless must be "generally stated if supportable by the record." Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 1:7-4 (2024). Here, the trial court found plaintiff "uniquely credible" without explaining why or how it reached that conclusion. The specific facts of this case: plaintiff's claim of fear belied by the video evidence of all parties calmly leaving defendant's house immediately after the alleged choking, her delay in telling R.E., who was not called as a witness at trial, text messages regarding consensual choking, and her focus on defendant's parenting behavior should have been addressed. Defendant's credibility was not addressed at all. Having observed this was a "difficult" case, the trial court was required to make findings as to why plaintiff's version of events was more credible than defendant's testimony.

Moreover, the trial court erred in hearing extensive testimony regarding custody and parenting time issues before finding a need for a FRO. It preoccupied itself almost exclusively with ancillary parenting and custody matters during the hearing. Those issues should not be addressed unless and until a FRO is issued. If a trial court has concerns regarding parenting, it has

other available avenues to impose parenting and custody restraints without entering a FRO.

In sum, we conclude the trial court failed to make sufficient findings with respect to the predicate act, the parties' respective credibility, and the second prong of Silver. The FRO is vacated. The TRO is reinstated and shall remain in place until a new order is entered following a new final restraining order hearing on remand. Because the trial court made some credibility determinations, albeit limited, we remand for a new trial before a different judge. See Freedman v. Freedman, 474 N.J. Super. 291, 308 (App. Div. 2023) (first citing J.L. v. J.F., 317 N.J. Super. 418, 438 (App. Div. 1999); and then citing P.T. v. M.S., 325 N.J. Super. 193, 220-21 (App. Div. 1999)). We take no position regarding whether a FRO should issue.

Reversed and remanded for a new FRO hearing. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1575-22