RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3434-22

STATE OF NEW JERSEY IN
THE INTEREST OF M.P., a
juvenile

_____

Submitted December 13, 2023 – Decided February 5, 2024

Before Judges Vernoia and Walcott-Henderson.

On appeal from an interlocutory order of the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FJ-07-1120-22.

Joseph E. Krakora, Public Defender, attorney for appellant (John P. Flynn, Assistant Deputy Public Defender, of counsel and on the brief).

Theodore N. Stephens, II, Acting Essex County Prosecutor, attorney for respondent (Matthew E. Hanley, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

By leave granted, juvenile-defendant M.P. appeals from a June 14, 2023 order granting the State's motion to waive jurisdiction of all charges against him to the Criminal Division pursuant to N.J.S.A. 2A:4A-26.1.

M.P. was seventeen years old when he was arrested and charged with acts of delinquency, which if committed by an adult, would constitute the crimes of: first-degree attempted murder, N.J.S.A. 2C:11-3(a)(1)[1], second-degree conspiracy to commit murder, N.J.S.A. 2C:5-2(a)(2) and N.J.S.A. 2C:11-3(a)(1), fourth-degree criminal mischief, N.J.S.A. 2C:17-3(a), and three possessory weapons offenses, N.J.S.A. 2C:39-5(b), N.J.S.A. 2C:39-4(a), and N.J.S.A. 2C:58-6.19(b).

We discern the following facts from the evidence adduced at the waiver hearing. Police officers responded to a shot spotter alert in the Grace West Manor residential complex in Newark. Detective Javier Figueroa from the Newark Police Department Major Crimes Shooting Response unit was among the officers who responded to the scene. At the waiver hearing, he testified the investigation began with the photographing and collection of evidence, including multiple shell casings found in Grace West's parking lot and a projectile retrieved from the interior of a nearby apartment's bedroom wall.

That same evening, Detective Figueroa contacted Grace West's property management office and requested video footage from a surveillance camera he

---

[1] Although not expressly referenced in the charge disposition document provided in the record on appeal, we note that M.P. was charged with an attempt under N.J.S.A. 2C:5-1 to commit murder as an act of juvenile delinquency.

had observed in the parking lot area where the shooting occurred. Detective Figueroa later testified that from that video footage, which included recordings from seven camera angles, he could see one entrance into Grace West.[2] The video showed two masked "actors" entering Grace West through a gate and walking into the parking area where the shell casings had been found. According to Detective Figueroa, one of the individuals wore "a red and blue sweater," and the other individual wore a black sweater "with white writing in the back." Both individuals could be seen firing multiple shots at an unknown and yet unidentified victim.[3] Detective Figueroa also explained the recordings showed that the individual wearing the black sweatshirt actively pursued the unidentified victim towards the apartment complex and then both shooters ran from Grace West in the direction of another nearby residential complex known as Fairview Homes.

Approximately one to two days later, Detective Figueroa secured video footage from the evening of the shooting from surveillance cameras outside of

---

[2] Grace West Manor is located at the intersection of Muhammad Ali Avenue and 220 Irvine Turner Boulevard and is accessible by a gate.

[3] All parties agree that the person observed to be running from defendant at the time of the shooting has never been identified and was not a witness in the juvenile waiver hearing.

A-3434-22

Fairview Homes. The Fairview video surveillance cameras captured individuals wearing the same-colored clothing as those in the video footage from Grace West on the evening of the shooting. Recordings from the cameras showed two individuals—one wearing a black sweatshirt with a white skull on the back and blue jeans, and the other wearing a red and blue sweater with grey pants. Detective Figueroa testified the video recordings showed the individual wearing the black sweatshirt moving around the Fairview complex from the playground area to the parking lot.

From other video footage, these same two individuals were observed getting into a grey Volkswagen SUV with a male driver wearing a white t-shirt, black jeans, and red sneakers. The video showed the Volkswagen and its three occupants leaving the Fairview complex. Detective Figueroa further testified that from the Fairview video footage and additional video surveillance footage from street cameras at 220 Irvine Turner Boulevard, with their multiple camera angles, he observed the Volkswagen drive from 220 Irvine Turner Boulevard, the street located just outside Fairview, to Grace West's parking area around the time of the shooting. Thereafter, two individuals—identified by the detective as M.P. and his co-defendant—could be seen exiting from the rear of the

A-3434-22

Volkswagen and entering the area of Grace West's parking lot, and later returning to the Volkswagen after the shooting.

Detective Figueroa testified that from the same video footage, he captured "still" photographs of the individuals, including M.P., and after learning that M.P. was a juvenile, he contacted M.P.'s father, also a resident of Newark, for an interview. Approximately four months after the shooting, M.P.'s father identified him from a still photograph that had been taken from the surveillance video footage—although he could not positively identify M.P. from other photos. Thereafter, M.P. was taken into custody and charged in the Family Part with the aforementioned offenses. The Essex County Prosecutor's Office subsequently sought to waive defendant to the Criminal Division pursuant to N.J.S.A. 2A:4A-26.1 and Rule 5:22-2, and filed its waiver motion.

The prosecutor issued a statement of reasons addressing the eleven factors that must be considered in making a waiver determination under N.J.S.A. 2A:4A-26.1(c)(3)(a)–(k). The State based its findings on the evidence available to it at the time, noting that it could not address factors N.J.S.A. 2A:4A-26.1(c)(3)(e)—eligibility for special education—and N.J.S.A. 2A:4A-26.1(c)(3)(j)—evidence of mental health concerns, substance abuse or emotional instability of the juvenile—due to a lack of information. Although

the prosecutor did not separately weigh each of the factors in her statement of reasons, she explained that "[t]he nature and circumstances of this crime weigh heavily in favor of waiving this juvenile to adult court," and noted that M.P. had "reached the age of majority . . . a few short months after committing the aforementioned crimes." The statement also listed the then-current charges and included extensive references to M.P.'s prior history of delinquency.

Nine months after the prosecutor filed its waiver motion, defense counsel provided a forensic expert report authored by Catherine M. Barber, Ph.D., a clinical and forensic psychologist with expertise in adolescent brain development, M.P.'s educational records, and a series of Individualized Educational Plans (IEPs) from various schools M.P. had attended. The prosecutor, however, did not provide a written response to the defense's production of these documents preferring instead to wait until the conclusion of the hearing to give their view of the mitigating evidence.

Approximately two months after the report was submitted, the court conducted the waiver hearing over the course of two days. There, the State acknowledged, for the first time, M.P.'s expert's report and mitigating evidence and stated:

> the State was in receipt of Dr. Barber's report, and the State indicated that it would not respond in writing at

6

that time. The State wanted to hear testimony from Dr. Barber, and the State [would be] ready to respond with respect to the impact that has had on the waiver motion.

During the waiver hearing, the prosecutor called Detective Figueroa and the defense called Dr. Barber. Dr. Barber diagnosed M.P. with Attention Deficit Hyperactivity Disorder (ADHD) "on the more severe end[,]" chronic depression, and substance abuse. She testified that although he was seventeen years old at the time, his psychological maturity was that of a fourteen or fifteen-year-old, and she highlighted his difficult relationship with his mother, prior involvement in gangs, and difficulty with social relationships and learning. Dr. Barber based her diagnosis on her review of M.P.'s educational records, including his IEPs, the police incident report concerning the charges, which included video footage and photographs, and her in-person interview with M.P.

On cross-examination by the State, Dr. Barber's testimony was largely consistent with her report and direct testimony regarding M.P.'s ADHD diagnosis and its effect on his education, difficulty separating from gang members, and behavior in general—that M.P. suffers from maturational delay. M.P. did not testify at the waiver hearing.

At the conclusion of the hearing, the parties presented their closing arguments highlighting the strengths and weaknesses of their respective

7

positions. At the request of the court, M.P.'s counsel presented closing arguments before the State. Counsel highlighted the alleged weaknesses in the State's evidence in support of waiver initially focusing on the State's use of a still photograph taken from video footage from Grace West and Fairview to identify M.P. as the shooter and detective Figueroa's reliance upon M.P.'s estranged father—who had not seen M.P. in more than one year—to identify him as the person in the photograph. In addressing the statutory factors, M.P.'s counsel argued the State failed to properly consider and weigh all of the factors, including factor N.J.S.A. 2A:4A-26.1(c)(3)(e)—eligibility for special education and N.J.S.A. 2A:4A-26.1(c)(3)(j)—evidence of mental health concerns, substance abuse or emotional instability of the juvenile—and "did not properly consider the factors that they did consider[,]" including a failure to provide any reason why M.P.'s mitigating evidence did not weigh against waiver.

Despite receiving M.P.'s expert report approximately two months before the hearing, the State first addressed M.P.'s mitigating evidence during closing arguments, stating "[t]he State wanted to hear testimony from Dr. Barber, and the State is, at this point, ready to respond with respect to the impact that has had on the waiver motion."

In closing arguments, the State disputed that M.P. had a cognitive disability, stating "[h]e has an impulse control disability[.]" and "knows the difference between right and wrong."  Again, prior to closing arguments, the State failed to address in writing M.P.'s expert report and opinions or any of the mitigating evidence offered and to amend its initial statement of reasons in the waiver motion.

At the conclusion of the hearing, the court issued a comprehensive oral opinion, finding it was not "clearly convinced that the prosecutor abused her discretion in her analysis of the eleven statutory factors in seeking waiver."  The court reviewed the prosecutor's determinations on each of the eleven factors and the prosecutor's statement of reasons and concluding remarks in closing, found the State had satisfied the statutory requirements for waiver.  The court denied M.P.'s request for a stay of its order.  We granted M.P.'s motion for leave to appeal and a stay.

M.P. raises the following points for our consideration:

> POINT I
>
> THE PROSECUTOR AND THE FAMILY PART JUDGE ABUSED THEIR DISCRETION IN ASSESSING THE STATUTORY WAIVER FACTORS.

A. The prosecutor violated Z.S.[4] and deprived M.P. of procedural due process by failing to respond to the extensive mitigation evidence in writing prior to the waiver hearing and by failing to ascribe specific weights to several of the waiver factors.

B. The prosecutor abused her discretion in failing to find that factor (e) weighed against waiver despite the extensive, unrebutted evidence of M.P.'s classification as being eligible for special education.

C. The prosecutor improperly discounted the unrebutted evidence of M.P.'s mental illnesses when assessing factors (j) and (d) and erroneously focused on the fact that M.P. knew right from wrong.

D. The prosecutor improperly relied on dismissed and pending juvenile charges when assessing factors(g) and (k).

POINT II

THE REMAND PROCEEDINGS SHOULD OCCUR BEFORE A DIFFERENT JUDGE BECAUSE THE JUDGE CREDITED CLAIMS THAT WERE NOT SUPPORTED BY EVIDENCE AND EVINCED A COMMITMENT TO UPHOLDING THE PROSECUTOR'S DECISION TO WAIVE JURISDICTION.

I.

The decision whether to seek waiver is committed to the discretion of the

prosecutor.  State in Int. of N.H., 226 N.J. 242, 249 (2016) (citing N.J.S.A.

---

[4]  State in the Int. of Z.S., 464 N.J. Super. 507, 519 (2020).

2A:4A-26.1(c)(3)).  The prosecutor has sixty days after receipt of the juvenile

complaint to file a motion for waiver.  N.J.S.A. 2A:4A-26.1(a).  The motion

must be accompanied by a statement of reasons setting forth the facts used to

assess the factors listed in the statute, together with an explanation of how those

factors support waiver.  Ibid.; see also N.H., 226 N.J. at 250.

Specifically, the prosecutor must consider the following eleven factors

listed in the waiver statute:

> (a) The nature and circumstances of the offense charged;
>
> (b) Whether the offense was against a person or property, allocating more weight for crimes against the person;
>
> (c) Degree of the juvenile's culpability;
>
> (d) Age and maturity of the juvenile;
>
> (e) Any classification that the juvenile is eligible for special education to the extent this information is provided to the prosecution by the juvenile or by the court;
>
> (f) Degree of criminal sophistication exhibited by the juvenile;
>
> (g) Nature and extent of any prior history of delinquency of the juvenile and dispositions imposed for those adjudications;

(h) If the juvenile previously served a custodial disposition in a State juvenile facility operated by the Juvenile Justice Commission, and the response of the juvenile to the programs provided at the facility to the extent this information is provided to the prosecution by the Juvenile Justice Commission;

(i) Current or prior involvement of the juvenile with child welfare agencies;

(j) Evidence of mental health concerns, substance abuse, or emotional instability of the juvenile to the extent this information is provided to the prosecution by the juvenile or by the court; and

(k) If there is an identifiable victim, the input of the victim or victim's family.

[N.J.S.A. 2A:4A-26.1(c)(3).]

The statute includes a presumption in favor of waiver for juveniles who commit serious acts, and the juvenile must overcome a "heavy burden" to defeat a waiver motion. Z.S., 464 N.J. Super. at 519 (citing State v. R.G.D., 108 N.J. 1, 12 (1987)). Also, the standard of review of the prosecutor's waiver decision is deferential. Ibid. The Family Part must "uphold the decision unless it is 'clearly convinced that the prosecutor abused [her or] his discretion in considering' the enumerated statutory factors." Ibid. Moreover, the family court may not substitute its judgment for that of the prosecutor. State in the Int. of V.A., 212 N.J. 1, 8 (2012). Instead, the court conducts a limited, yet substantive,

review to ensure that the prosecutor has made an individualized decision about the juvenile that was neither arbitrary nor abused the prosecutor's considerable discretion. Ibid.; see also N.H., 226 N.J. at 255 (explaining that "the prosecutor's decision to seek waiver is subject to review—at the hearing—for abuse of discretion").

As explained by our Supreme Court in In re State ex rel. A.D., appellate review of a juvenile waiver decision requires a determination of whether the trial court's findings of fact are "grounded in competent, reasonably credible evidence" and whether the trial court applied the "correct legal principles." 212 N.J. 200, 214-15 (2012) (quoting R.G.D., 108 N.J. at 15). Moreover, "the judicial power to modify a trial court's exercise of discretion will be applied only when there is a clear error of judgment that shocks the judicial conscience." Id. at 215 (quoting R.G.D., 108 N.J. at 15).

## II.

M.P. primarily contends that the court erred in finding the State did not abuse its discretion when it chose not to respond to his "extensive mitigation evidence in writing prior to the waiver hearing and by failing to ascribe specific weight to several of the waiver factors[,]" thereby depriving M.P. of procedural due process. M.P. cites State in the Interest of Z.S. in support of this proposition,

13

arguing that, "Z.S. requires prosecutors to respond to the juvenile's mitigating evidence in writing, even if the juvenile submits mitigation evidence after the prosecutor submitted an initial statement of reasons . . . ."

The State disputes this contention and maintains that there is no affirmative statutory or legal requirement that the State respond to each and every submission made by the juvenile prior to the waiver hearing. The State also challenges M.P.'s reliance on Z.S., arguing Z.S. is factually distinguishable because the court in Z.S. found "critical procedural deficiencies . . ." that are not present here. Moreover, the State relies on Z.S. for the proposition that the prosecutor's detailed statement of reasons for waiver satisfies the State's obligation under N.J.S.A. 2A:4A-26.1 to provide a written statement of reasons supporting its waiver decision. See Z.S., 464 N.J. Super. at 533 (holding the "sufficiency of the prosecutor's written statement of reasons" is assessed based on whether the State considered "all of the statutory factors and the circumstances fully and not arbitrarily"). The State also maintains that the prosecutor squarely addressed the IEPs and mitigating evidence on mental health and substance abuse in making the waiver decision.

Our review of juvenile waiver cases is limited to "whether the correct legal standard has been applied, whether inappropriate factors have been considered,

14                                                                    A-3434-22

and whether the exercise of discretion constituted a 'clear error of judgment'" under all the circumstances.  State in the Int. of J.F., 446 N.J. Super. 39, 51-52 (App. Div. 2016) (quoting R.G.D., 108 N.J. at 15); see also A.D., 212 N.J. at 215 (internal citation omitted).

Because both parties rely on Z.S. to support their respective arguments, a discussion of Z.S. is warranted.  In Z.S., the juvenile's counsel became hospitalized with pneumonia a week before the scheduled waiver hearing and was only medically cleared and released a mere two days before the hearing. 464 N.J. Super. at 527.  Because of her condition, counsel sought an adjournment of the waiver hearing with the consent of the State, but the court denied counsel's request.  Ibid.  We considered the juvenile's appeal of the court's waiver determination and reversed.  We concluded that the prosecutor's two statements of reasons supporting the waiver motion were deficient because the prosecutor's initial statement of reasons was based on an "improvised" form—which the Attorney General's office noted was not one that was used by any other county—that failed to address all eleven factors required by the amended waiver statute, and the prosecutor had failed to address certain factors. See N.J.S.A. 2A:4A-26.1(c)(3)(a)–(k). With respect to the prosecutor's amended statement of reasons, which amounted to a two-page supplemental brief, we also

deemed that filing to be "materially deficient," because it did not "explain why Z.S.'s special education status and IEP plan [were] immaterial or insignificant." Id. at 541-42. Moreover, we considered that the two-page supplemental brief containing the amended statement of reasons was received by defense counsel only one day before defense counsel was hospitalized with pneumonia. Id. at 526-27.

It is against that backdrop that we held there were two independent grounds for reversal, "grave procedural shortcomings"—the denial of counsel's adjournment request though seriously ill—which is not an issue here, and the deficient quality of the prosecutor's reasoning for waiver—which is an issue here because of the prosecutor's failure to provide a written assessment of all the statutory factors even after being supplied with information allowing the prosecutor to do so. See id. at 543-44. We also offered guidance on how best to proceed in waiver matters and emphasized that the prosecutor's statement of reasons must be detailed and cannot "simply mirror the statutory language in a cursory fashion," id. at 533 (quoting N.H., 226 N.J. at 250), "cannot be incomplete or superficial" or make "conclusory assertions that are devoid of analysis," and "[n]o one factor . . . may be treated as dispositive," while the

16

decision as to how much weight to accord each statutory factor remains vested in the discretion of the prosecutor, id. at 534.

The State does not dispute that in its initial statement of reasons, it considered and weighed only those factors for which it had available evidence, explicitly noting that, at the time of its filing, it had no information concerning M.P.'s special education classification—which is relevant under factor (e) of N.J.S.A. 2A:4A-26.1(c)(3)—or any evidence of mental health concerns, substance abuse, or emotional instability—which is pertinent under factor (j) of the statute. Indeed, in its written statement of reasons, the State expressly stated it could not assess those factors due to its lack of information pertinent to them.

Approximately nine months after the prosecutor's motion and two months before the waiver hearing, counsel for M.P. served the State with a forensic expert report, educational records, and IEPs from various schools M.P. had attended. Upon its receipt of the information, the State for the first time had information permitting it to assess factors (e) and (j). However, instead of filing a written assessment of them in response to the newly served expert report, IEPs and other proofs, the State waited until the conclusion of the waiver hearing to orally address M.P.'s mitigating evidence during its summation.

17

M.P. contends that had the prosecutor provided a written response to his expert's report and other proofs, including his ADHD and chronic depression diagnoses, he would have had the benefit of the State's view of this evidence and the weight to be accorded to all of the factors prior to the waiver hearing and, thus, would have been better prepared to respond to the prosecutor's arguments.

We discern from M.P.'s arguments that evidence of his educational, mental health, and familial challenges were to be used to persuade the prosecutor against waiver, and conclude that as in Z.S., "the prosecutor's attempt at the waiver hearing to cover omitted ground orally did not cure the problem[,]" of the State's failure to respond to the mitigating evidence in writing prior to the hearing. Id. at 543. We also conclude that the State's decision to wait until it gave its summation to address M.P.'s mitigating evidence was particularly egregious because it left M.P. without any opportunity to respond to the State's arguments and assessment of the all the statutory factors.

We discern no error in the State's decision to pursue waiver and the timely filing of its waiver motion and statement of reasons based on the information it had available at the time while acknowledging there were statutory factors—N.J.S.A. 2A:4A-26.1(c)(3)(e) and (j)—that could not be assessed or weighed based on a lack of information. In fact, and as noted, the prosecutor

18

acknowledged in the written statement of reasons that she could not examine and weigh factors (e) and (j) because of a dearth of pertinent information regarding M.P.'s eligibility for special education, mental health and substance abuse concerns, and emotional instability.

Indeed, the statute contemplates that information may be provided to the prosecution by the juvenile to fill-in any gaps pertinent to these factors with information not yet known to the prosecutor—the exact circumstances presented here. Factor (e) requires consideration of the juvenile's eligibility for special education and provides "[a]ny classification that the juvenile is eligible for special education to the extent this information is provided to the prosecution by the juvenile or by the court." N.J.S.A. 2A:4A-26.1(c)(3)(e) (emphasis added). Similarly, factor (j) refers to "[e]vidence of mental health concerns, substance abuse, or emotional instability of the juvenile to the extent this information is provided to the prosecution by the juvenile or by the court[.]" N.J.S.A. 2A:4A-26.1(c)(3)(j) (emphasis added). The language of both factors (e) and (j) makes clear that there will be instances where additional information will be provided to the prosecutor even after the filing of the initial statement of reasons.

Here, upon receipt of M.P.'s expert's report, IEP, and educational records, the prosecutor incorrectly decided not to provide a written amended statement of reasons assessing and weighing M.P.'s newly served expert report and mitigating evidence, arguing instead that the State would respond during the waiver hearing. This decision is contrary to the holding in Z.S., which requires "written, not just oral, statements of reasons," and explains "[t]hat disclosure gives the defense a fair opportunity to make strategic decisions, such as perhaps obtaining supplemental expert reports that may persuade a prosecutor's office to reconsider its decision to seek waiver or calling witnesses at the hearing to buttress the defense's position." 464 N.J. Super. at 543. Additionally, Z.S. is unequivocal in its holding that "[o]ral argument should not be the first time the defense learns of the prosecutor's reasons, particularly in this context that is such a crucial event in the charged minor's life." Id. at 519.

We conclude that under the circumstances presented here, the waiver statute and Z.S. required that the State file an amended statement of reasons addressing the statutory factors it initially stated it could not assess based on its lack of information after the pertinent information was provided by M.P. In its failure to assess those factors after receiving the information and provide an amended written statement of reasons after its assessment of those factors, the

prosecutor did not weigh all of the enumerated factors as required by the waiver statute and, thus, deprived M.P. of a fair opportunity to prepare for the waiver hearing and make strategic decisions to respond to the prosecutor's evaluation of its evidence. We further conclude, based on the unique circumstances of this case, that the Family Part judge erred by finding that the prosecutor did not abuse her discretion by failing to serve an amended written statement of reasons assessing and weighing factors (e) and (j), and by offering the State's assessment and weighing of those factors for the first time during closing arguments. On this basis, we vacate the prior order and remand for the State to file an amended written statement of reasons addressing M.P.'s expert report and mitigating evidence.

III.

M.P. contends that the prosecutor's weighing of certain factors was deficient or improper, averring that she improperly: weighed factor (e) against waiver at the conclusion of the waiver hearing despite the extensive, unrebutted evidence of his eligibility for special education; discounted the unrebutted evidence of his mental illness for factors (d) and (j), focusing instead on the fact that M.P. knew right from wrong; relied on dismissed and pending juvenile charges in assessing factor (g); gave no clear weighing on factor (h); and did not

include an identifiable victim as to factor (k). These contentions, however, were flatly rejected by the State.

Because we vacate and remand this matter for the State to serve an amended written statement of reasons based upon M.P.'s submissions and the evidence adduced at the waiver hearing, we do not address the merits of M.P.'s arguments as to the weight accorded to each of the statutory factors addressed by the State in its initial statement of reasons. In fact, on remand, we do not limit the State's consideration or re-weighing of any of the statutory factors in light of M.P.'s expert report and mitigating evidence. Additionally, the Family Part judge shall review the State's consideration of all of the factors in light of M.P.'s evidence and discuss the weight accorded to each of the statutory factors consistent with the waiver statute and this opinion.

In reaching this conclusion, we do not hold that a prosecutor must provide a written amended statement of reasons each time a juvenile submits additional information in response to a waiver motion. Rather, we conclude only that where the State is unable to assess a statutory factor in its initial written statement of reasons due to a lack of available information, it must amend its written statement of reasons supporting waiver to address the statutory factor after the information is obtained or timely made available.

A-3434-22

For the foregoing reasons, we vacate the court's order granting the State's waiver motion and remand for further proceedings. The State shall provide an amended written statement of reasons supporting its waiver decision, and the court shall consider whether there is a need for a further evidentiary hearing to address the State's motion. The court shall conduct such proceedings as it deems appropriate and decide the motion on the record, including the prior hearing, presented by the parties. Our decision to remand the matter shall not be construed as an expression of an opinion concerning the merits.

We discern no basis to grant M.P.'s request that this matter must be remanded to a different judge. The judge presented a thorough review of the factors and expressed no opinions that would suggest "a commitment to [her] findings." Carmichael v. Bryan, 310 N.J. Super. 34, 49 (App. Div. 1998). Nor did the judge engage in comments regarding credibility. Freedman v. Freedman, 474 N.J. Super. 291, 308 (App. Div. 2023) (citing J.L. v. J.F., 317 N.J. Super. 418, 438 (App. Div. 1999)). Accordingly, M.P.'s request is denied.

Vacated and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

23